### O. C. DREW v. W. O. ELLIS.

#### No. 454.

**1. Damages for Attachment of Realty—Fact Case.**—Levy of attachment May 13, 1891, on realty in which defendant had a half-interest, and against which there was outstanding a vendor's lien for about $7000, due March 30,1892. September 19, 1891, an offer of $10 per acre was made defendant for a clear title to the whole land, $2000 cash, and half the balance in one and half in two years. Defendant replied to the offer, that he only owned a half-interest. The purchaser responded: "Would prefer to buy all, but if parties interested with you will accept same offer made you, I will make the same proposition to them. If you wish to sell your undivided half, my proposition holds good if you will accept terms stated." Defendant afterwards contracted to sell to another at $5.65 per acre within one year from November 25,1891, and claimed as damages the difference between the first and last offer, and that the first had been broken up by the attachment. *Held*, not recoverable. The first offer was conditional, and defendant was not in condition to make clear title.

**2. Damages for Attachment of Real Estate.**—No case has been cited or found in which damages have been allowed for the levy of an attachment on real estate, but a loss might result therefrom which would be so direct and proximate as to entitle the party to compensation; as for instance when a pending trade is broken up by the levy itself, unaided by the act or delinquency of defendant, and depreciation and loss follows.

**3. Depreciation in Value as Damage.**—Depreciation in value occurring during the levy is not such a direct effect of the levy as in itself would entitle the defendant to damages.

APPEAL from Fort Bend. Tried below before Hon. T. S. REESE.

*Hutcheson & Sears,* for appellant.—1. An attachment and levy on land does not entitle a defendant to any damages for the depreciation of the value of the land under attachment, and the pleadings in this case present no exception to this rule; indeed, they show the intervention of an improvident and voluntary act of appellee which produced his loss, and if not the sole cause, certainly the main and proximate one. Trawick v. Martin-Brown Co., 79 Texas, 460; Drake on Attach., sec. 179; Waples on Attach., 448.

2. Even if there were damages allowable for the levy of an attachment upon land, the difference between the offer and the subsequent sale is not within the range of consequential damages, in that it is neither a natural and probable result of the act of the plaintiff, nor a necessary or imposed act on the part of the defendant. Pinson v. Kirsh, 46 Texas, 29;

Wallace v. Finberg, 46 Texas, 46; Kendall v. Sterne, 5 N. Y., 14; Sedg. on Dam., secs. 142, 143, 201, 205; Drake on Attach., sec. 175; 1 Suth. on Dam., 56, 57.

3. If the pleadings allege a legal element of recovery on which the court should have heard the evidence, still the evidence wholly fails to establish a sale which defendant could have made to Zimpelman, or one which was defeated by the attachment. The evidence shows that Zim- pelman and he never reached an agreement. The testimony shows nothing which would indicate that the title would have been "satisfactory to Zimpelman's attorney," which was a stipulation of his offer, or any evi-. dence offered upon this point; and the record discloses that there was an encumbrance of about $7000 at the time the proposition of sale was under consideration, which was due on March 30, 1892, and which encumbrance would have been wholly inconsistent with the terms of payment proposed by Zimpelman, which is affirmative proof that the trade could not have. been consummated upon the then pending proposition. Foster v. Land Co., 2 Texas Civ. App., 505; Chitty on Con., 8-17; Bish. on Con., secs. 321-329; Trevor v. Wood, 36 N. Y., 310; White v. Collins, 46 N. Y., 469; McDonald v. Burwick, 57 Mich., 129; Eliason v. Henshaw, 4 Wheat., 228; Harlor v. Curtis, 121 Mass., 320; Porter v. Meyer, 37 N. Y., 325; Cochran v. White, 117 Ill., 118.

*West & Cochran* and *Barnard & McGown*, for appellee. — 1. Drew wrongfully issued an attachment and had it levied upon Ellis' land, thereby defeating an advantageous sale which Ellis could have made to. Zimpelman. This was the proximate result of his wrongful act, for which the law will compel him to respond in damages. It makes no dif-. ference that the opportunity of sale arose after the levy, for the defeat, of the sale is an injury "to the defendant directly traceable to the issu- ance of the writ; though occurring later in the proceedings, they are covered by the obligation assumed by the plaintiff when giving the bond." Waples on Attach., 449; Boatwright v. Stewart, 37 Ark., 614; Dent v. Smith, 53 Iowa, 262; Frankel v. Stein, 44 Cal., 168; Leah v. Green, 21 Ala., 491; Wallace v. Finberg, 46 Texas, 36; Churchill v. Abraham, 22 Ill., 455; Denning v. Humphrey, 24 Wend., 31; Lawrence v. Hagerman, 56 Ill., 68; Clark v. Bratt, 71 Mo., 473; Heiligman v. Rose, 81 Texas, 226; Sexton v. Zett, 44 N. Y., 430.

The measure of his damage is usual compensation for actual damages. Hays v. Anderson, 57 Ala., 374; Pounds v. Hamner, 57 Ala., 342.

2. The evidence is sufficient to show a binding contract of sale to Zim- pelman by Ellis. He refused to buy because of the attachment lien; and that Ellis sold at the then market price to prevent further loss. And this court will not, under its well established rules, disturb the judgment of the trial court, even though the evidence may not be as full as this court

may require.   Jacobs v. Hawkings, 63 Texas, 1;  Chase v. Veal, 83 Texas, 333;  Moore v. Rogers, 84 Texas, 1;  Reeves v. Roberts, 62 Texas, 550; Ragland v. Wisrock, 61 Texas, 391;  Galveston v. Devlin, 84 Texas, 326; Hardware Co. v. Kaufman, 77 Texas, 131;  Krohn v. Heyn, 77 Texas, 319; Bell v. Boyd, 76 Texas, 133;  De Cordova v. Bahn, 74 Texas, 643;  Wolff v. Brass, 72 Texas, 133;  Graig v. Mark, 65 Texas, 649;  Railway v. Dawson, 62 Texas, 260.

WILLIAMS, ASSOCIATE JUSTICE.—R. H. and H. L. Sellers executed to W. O. Ellis their note for $5000, with interest and attorney fees, in consideration of certain stock to be delivered by him to them upon payment of the note, and which was retained, attached to the note, as collateral security for its payment.   Ellis endorsed the note to appellant.   Subsequently, by some mistake, the stock was delivered to Ellis, and by him was disposed of, with the statement that he had other stock in bank to deliver to the Sellerses.   The note matured, was not paid, and was protested, the stock not having been delivered as agreed upon.

Appellant sued the makers of the note, joining appellee Ellis as endorser, and took out an attachment against him on the ground that he had disposed of his property in part for the purpose of defrauding his creditors, which attachment was levied upon Ellis' real estate.   The Sellerses pleaded failure of consideration, and Ellis reconvened for damages for the wrongful and malicious suing out of the attachment, alleging, among other things, that a profitable sale of the land attached had been prevented by the levy.

At the trial all parties conceded that the Sellerses were not liable upon the note, and they were discharged.   Ellis did not deny his liability on the note, but relied solely upon his plea in reconvention for damages. Judgment was rendered against him for the amount due on the note, and in his favor for $8528.80 damages.   From this judgment Drew prosecutes this appeal.

The basis of the judgment for damages was an offer made by George B. Zimpelman to Ellis for the land pending the suit.   The transaction will appear from the following correspondence:

"AUSTIN, Texas, September, 19, 1891.

"*W. O. Ellis, Esq., Fort Bend County, Texas:*

" DEAR SIR—I understand that you are the owner of the Thomas Earle survey of 3565 acres of land in Harris County, on Buffalo Bayou, and that same is for sale.   If you are desirous of selling, I will give you for a clear title, which must be satisfactory to my attorney, $10 per acre for it.   I can pay $2000 cash, and will pay you one-half the balance in one year, and one-half in two years, with 8 per cent interest.   Please answer this promptly if you accept.   You can address me here.

"As the cash payment is small, if you wish it I will give you additional security for payment of first note, to make it entirely secure.

"Yours truly,

[Signed]                   "George B. Zimpelman."

"Sartartia P. O., Texas, September 19, 1891.

"*Col. George B. Zimpelman, Austin:*

"Dear Sir—Note yours 18th. I only own an undivided half-interest in the Thomas Earle 3565 acres survey. Please let me know if you would make the offer for an undivided half interest in the tract. Please reply prompt.

"Yours truly,

[Signed]                   "W. O. Ellis."

"Austin, September 22, 1891.

"*W. O. Ellis, Esq., Sartartia P. O., Fort Bend County, Texas:*

"Dear Sir—I thought you owned the whole tract of the Thomas Earle survey when I made you the offer. I would prefer to buy all, but if the parties interested with you will accept the same offer I made you, will make the same proposition to them. Please let me know who the parties are, so I can write to them; or if you will be kind enough for you to mention it to them, will be much obliged to you.

"If you wish to sell your undivided half, my proposition holds good if you will accept the terms stated. Please let me hear from you at once.

"Yours truly,

[Signed]                   "Geo. B. Zimpelman."

"Sartartia P. O., September 24, 1891.

"*Col. Geo. B. Zimpelman, Austin, Texas:*

"Dear Sir—Note favor of 22nd. My half-interest in the land has been so clouded by litigation that it will be impossible for me to make a clear title. A. J. Vick owns the other half of this tract. I think Mr. Vick would sell the land, but his conversation with me leads me to believe that he would want a good cash payment on the land; but you might confer with him.

"Yours truly,

[Signed]                   "W. O. Ellis."

At the time the offer was made by Zimpelman the land was encumbered by a vendor's lien note on which about $7000 was to become due March 30, 1892.

It was shown that Ellis had large means, and he was amply able to have paid the note either before or at the date of Zimpelman's offer. There are other facts, but these will suffice for the disposition of the case.

*Opinion and Conclusions of Law.* —It appears that at the time the attachment was levied there was no pending trade which was defeated by the levy. Ellis owed the debt, was able to pay it, and it was his duty to do so. The question presented then is, whether or not he can recover for the loss which resulted from his failure or refusal to sell to Zimpelman.

No case is cited or found in which damages have been allowed for the levy of an attachment upon real estate. At the same time there is good authority for the position, to which we readily assent, that a loss might result from such a levy, which would be so direct and proximate as to entitle the party to compensation. Wade on Attach., 579; Trawick v. Martin-Brown Co., 79 Texas, 460; Wetsel v. Tillman, 3 Texas Civ. App., 559.

But the principle is firmly established here as elsewhere, that mere depreciation in value occurring pending the levy is not such a direct effect of the levy. The owner is not disturbed in his possession and use of the premises, and the levy does not of itself lessen the value of the property. When a pending trade is broken up by the levy itself, unaided by the act or delinquency of the defendant, and depreciation and loss follow, a different case is presented. If the defendant does not owe the debt, it would be difficult, under such circumstances, to show why he should not recover. Such a case is presented in Wetsel v. Tillman, 3 Texas Civil Appeals, 559, which is distinguishable from this by the fact, among others, that the property of the party was there attached for a debt for which he alleged he was not liable.

In Trawick v. Martin-Brown Company, supra, one of the reasons given for not allowing the party whose land was attached to recover for alleged loss of sales is thus stated: "Ordinarily, as we take it, where the defendant, as in this case, owes the debt for which he is sued, a levy upon real estate can have no such effect. ·If he can find a purchaser he can pay the debt, as he ought to do, and discharge the lien." This reason applies here. The attachment was on the land several months before the offer was made, during which no damage had resulted. Ellis could have discharged the lien either before or after the offer was made, and thus have avoided the loss of which he complains. It was his duty to have done so. The case is unlike that of a levy upon personal property, when it is taken from the owner's possession and the damage begins at once. The levy upon land, of itself, causes no damage, unless perhaps a trade pending at the time of the levy is defeated; and can cause none thereafter if the defendant owes the debt and discharges his obligation.

But it does not appear satisfactorily that Zimpelman would have bought the land had there been no attachment. The title was not in the condition contemplated by his offer, as it was encumbered by a debt soon to fall due, while he required a good title. This encumbrance, it is true, might have been adjusted; but it does not appear that Zimpleman knew of it or would have taken the land thus charged. In several other particulars the

case made by the appellee appears to us to be deficient, but those pointed out are, we think, sufficient to dispose of the case.

·The judgment will be reversed, and judgment will be here rendered for appellant against appellee for the debt, interest, attorney fees, and costs, and against appellee that he take nothing by his plea in reconvention.

*Reversed and rendered.*

Delivered March 1, 1894.

Application for writ of error to Supreme Court was refused May 21, 1894.